UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EL-FATIH P. NOWELL,<br><br>Plaintiff,<br><br>vs.<br><br>TRIMED AMBULANCE, LLC and KENT FIRE DEPARTMENT REGIONAL FIRE AUTHORITY aka PUGET SOUND REGIONAL FIRE AUTHORITY and JOHN DOES 1-4,<br><br>Defendants. | No. 2:17-cv-01133 RSL<br><br>DEFENDANT TRIMED AMBULANCE, LLC'S MOTION FOR SUMMARY JUDGMENT<br><br>NOTE ON MOTION CALENDAR:<br>August 10, 2018<br><br>ORAL ARGUMENT REQUESTED |

**RELIEF REQUESTED**

Defendant, TriMed Ambulance, LLC (hereinafter "TriMed"), moves for summary judgment as to all claims asserted by Plaintiff associated with its transportation of Plaintiff to a hospital after an involuntary commitment decision by a Kent police officer. Plaintiff's tort claims are barred by the immunity provision of Washington's Involuntary Treatment Act, and Plaintiff's Civil Rights claims are improper because TriMed did not act under the color of state law.

DEFENDANT TRIMED AMBULANCE, LLC'S
MOTION FOR SUMMARY JUDGMENT
(Cause No. 2:17-cv-01133 RSL) – 1
JCM6317.093/2832146x



WILSON SMITH COCHRAN DICKERSON
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

# STATEMENT OF FACTS

### A. Background

TriMed is a private ambulance company that offered "Basic Life Support ("BLS") transport services" to Kent Fire Department (hereinafter "Kent RFA") pursuant to a services contract (hereinafter the "Contract"). (Miller Decl., Ex. 1). The only parties to this Contract are TriMed and Kent RFA. *Id.* The contract calls for Kent RFA to act as "first responder for all 9-1-1 calls and perform[ ] triage and interrogation of all patients." *Id.* The Contract makes clear that the 'incident commander' controls the scene, defined in paragraph 2.10 as "the Kent RFA person in charge of the emergency response at an incident." *Id.*

The duties of TriMed ('The Contractor') are delineated in Paragraph 5.2.2:

> 5.2.2 <u>Transport Protocols</u>. The Contractor shall adhere to RFA transport protocols for services performed under this Agreement.
>
> > 5.2.2.1 The Contractor agrees that it is the responsibility of the RFA to provide rapid initial BLS response to all requests for medical assistance and advanced field life support to medical emergencies within the response area. Except when authorized by the RFA, the Contractor shall not provide rapid initial response or advance life support to medical emergencies within the response area.
> >
> > 5.2.2.2 When the Contractor arrives at an incident scene in response to a RFA request, the Contractor's personnel shall report to the incident commander, or his/her designee, in charge of the emergency who shall, when appropriate, designate the mode of transportation and the hospital to be utilized. Patients in a life-threatening or potentially life-threatening condition shall be transported to area hospitals as directed by the RFA.
> >
> > 5.2.2.3 The Contractor shall immediately request the services of the RFA and, if appropriate, King County Medic 1, if the Contractor receives a citizen request for emergency medical assistance. In the event that a non-life-threatening emergency being handled by the Contractor becomes an emergency requiring the services of an ALS technician, the Contractor shall immediately request the services of the RFA.

DEFENDANT TRIMED AMBULANCE, LLC'S
MOTION FOR SUMMARY JUDGMENT
(Cause No. 2:17-cv-01133 RSL) – 2
JCM6317.093/2832146x

WILSON SMITH COCHRAN DICKERSON

901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

TriMed only provides transport services "in response to a [Kent] RFA request." *Id.* TriMed plays no role in determining whether a patient actually requires transport. *Id.* The respective duties are confirmed by both TriMed and Kent RFA personnel:

- **Q:** … do you know what TriMed's agreement with [Kent RFA] was?
  **A:** They[ ] [provide] transport of patients that we give to them.
  …
  **Q:** … the decision to have [a patient] transported to the hospital [is] made without TriMed's input, is that accurate?
  **A:** Correct. They don't make that decision.

  (Miller Decl., Ex. 2 at 66 and 68).

- **Q:** … What was your understanding of the agreement between … Kent RFA and … TriMed?
  **A:** TriMed provides transport service for [Kent RFA] once we've determined that they need to go from where they're at to the hospital.
  **Q:** Okay. But the determination of whether the patient needs to be transported is generally made before TriMed arrives?
  **A:** Correct.

  (Miller Decl., Ex. 3 at 68).

- **Q:** Now how can you tell me how a typical call works … since this happened in Kent, why don't you give me the Kent one.
  **A:** Okay. So when someone calls 9-1-1 in Kent, they get a Kent unit dispatched … Typically, the BLS [basic life support] engine company will go respond to the call, treat the patient, decide if the patient needs transport to the hospital. And if they do, [Kent RFA] will request a TriMed ambulance for transport.
  …
  **Q:** Okay. So it is your testimony that Kent Fire Department personnel made the decision to involuntary commit Mr. Nowell?
  **A:** Yes.
  …
  **Q:** So [TriMed] did not make the decision whether or not to transport, correct?
  **A:** Not unless there's a rare circumstance … it's [Kent RFA] making that decision.

  (Miller Decl., Ex. 4 at 21-22, 62, and 70).

- **Q:** Okay. But it's your understanding though that Tri-Med never made the decision to do an involuntary commitment? That decision was usually made by the fire department or the police department; is that right?

DEFENDANT TRIMED AMBULANCE, LLC'S
MOTION FOR SUMMARY JUDGMENT
(Cause No. 2:17-cv-01133 RSL) – 3
JCM6317.093/2832146x

WILSON SMITH COCHRAN DICKERSON
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

**A:** Yes, sir. Basically as a Tri-Med EMT, we had little say on -- you know, on decision making. When we were called -- you know, we when would get called to respond on the scene, we would arrive, and very little communication would be done. We basically acted more as a transporting agency.

(Miller Decl., Ex. 5 at 27).

Pursuant to Section 9.2, TriMed would have breached this Contract if it failed "to perform in accordance with any of the provisions of this Agreement"—i.e., by failing to provide transport services at the request of Kent RFA. (Miller Decl., Ex. 1). This Contract was in place when Defendants encountered Plaintiff at his place of employment in June of 2015. *Id.*

### B. Subject Incident

On the morning of June 18, 2015, Plaintiff El-Fatih Nowell arrived at work and began experiencing "pains in my chest and a little pain in – in my right leg." (Miller Decl., Ex. 6 at 80). This was not the first time Plaintiff had experienced chest pains, as he suffered a 'transient ischemic attack,' or 'TIA,' in 2013 that was also precipitated by chest pains. *Id.* at 28-29. A TIA is "also known as a 'mini-stroke.'" *Kresser v. Boeing Co.,* 158 Wash. App. 1053, 1053 (2010).

At some point that morning, Plaintiff's supervisor Carol Forehand learned that Plaintiff was "doubled over in the elevator … they said he was using the wall to hold himself up while he went into the bathroom." (Miller Decl., Ex. 7 at 9). A male employee checked on Plaintiff in the men's bathroom and escorted Plaintiff to her office. *Id.* Ms. Forehand immediately recognized Plaintiff was "[i]n distress of some kind … He was a little bit disoriented. He was agitated. He was breathing kind of quickly … I observed [Plaintiff] slurring his speech. It was not something that I had heard from him before." *Id.* at 11-13. Plaintiff told Ms. Forehand he was experiencing "a little chest pain and a little pain in my

DEFENDANT TRIMED AMBULANCE, LLC'S
MOTION FOR SUMMARY JUDGMENT
(Cause No. 2:17-cv-01133 RSL) – 4
JCM6317.093/2832146x

WILSON SMITH COCHRAN DICKERSON
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

right foot, you know, in the right leg side." (Miller Decl., Ex. 6 at 83). After observing and conversing with Plaintiff, Ms. Forehand decided to call 911. (Miller Decl., Ex. 7 at 9).

Kent RFA immediately responded to the 911 call, with Dave White acting as 'patient lead,' meaning he was "in charge of the patient." (Miller Decl., Ex. 2 at 66). Upon arrival, White was informed Plaintiff was found "in the bathroom unresponsive, not unconscious, but unresponsive." *Id.* at 23. White interviewed Plaintiff: "He was not – not responding appropriately … he was taking a long time to respond. … His responses weren't so much strange in that they were really slow … He did say that his chest was hurting … he was repeating some things." *Id.* at 24-27. White noted Plaintiff's "history of TIA." *Id.* at 36.

Kent RFA personnel Nate Strobel checked Plaintiff's vital signs. (Miller Decl., Ex. 3 at 23). Plaintiff appeared "lethargic, had slurred speech and wouldn't focus on anything with his vision. … his speech pattern was slow and slurred. He wasn't pronouncing words fully. … it took him a while to understand and answer the questions appropriately." *Id.* at 29-30. TriMed employee Scott McClaine also observed Plaintiff: "[T]he patient had slurred speech, seemed to be confused … The firefighters were telling him he needs to go to the hospital, and I believe the patient didn't want to go." (Miller Decl., Ex. 4 at 26).

Throughout White's questioning, Plaintiff repeatedly insisted he be allowed to drive home: "He was insisting no, he wanted to drive … He said no, I just want to drive home." (Miller Decl., Ex. 2 at 36 and 40). Plaintiff himself agrees he should have been permitted to drive home. (Miller Decl., Ex. 6 at 101 and 290). However, White disagreed: "[G]iven what [co-employees] told me about him being not responsive, what the supervisor indicated that he's not right, and history of a TIA, I determined that he shouldn't drive. … I told him … it's not a good idea for him to drive." (Miller Decl., Ex. 2 at 36-37). White then attempted to

DEFENDANT TRIMED AMBULANCE, LLC'S
MOTION FOR SUMMARY JUDGMENT
(Cause No. 2:17-cv-01133 RSL) – 5
JCM6317.093/2832146x

WILSON
SMITH
COCHRAN
DICKERSON

901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

work with Plaintiff as to other arrangements including calling his own personal physician, calling his wife, or other means. *Id.* at 37-41. However, in the end, Plaintiff insisted that he be allowed to drive home. (Miller Decl., Ex. 6 at 101).

Based on the entirety of the circumstances, White determined the safest course would be to have Plaintiff transported to the hospital: "I have to make a judgment call on what I see, what I'm given as far as information by his co-workers or friends or family, and put all that together and make the decision." (Miller Decl., Ex. 2 at 42). This decision was made solely by White, "[TriMed personnel] don't make that decision." *Id.* at 68.

> **Q:** … When you made the decision that [Plaintiff] needed to go to the hospital – and you did make that decision, correct?
> **A:** Correct.

*Id.* at 67.

Once Plaintiff was informed that he was being transported to the hospital, "he decided to bolt." *Id.* at 42. The details of exactly what transpired are unclear, but upon hearing this decision Plaintiff attempted to leave the scene:

- **A:** We had a conversation for a few minutes, and we expressed several times that we would try and figure out any way to get him where he wanted to go, but the one thing that we couldn't in good conscious do was let him get behind the wheel … And then I was down at the kits. I look up in time to see [Plaintiff] running towards the door, and –
  **Q:** You saw him –
  **A:** -- He was trying to bowl Bob over. … He got up and run/stumble towards the door and tried to basically run through Bob, who was in the door at the time. … And when he went and went at Bob … Bob bear hugged him and took him down to the gurney. And the gurney was right there in the door as well. So he took him to the gurney.

(Miller Decl., Ex. 3 at 49-50).

- **A:** The ambulance crew with their gurney was just outside the office door. … Bob Backstein of my crew was in the doorway. And Nate [Strobel] and I were both in the office with [Plaintiff]

DEFENDANT TRIMED AMBULANCE, LLC'S
MOTION FOR SUMMARY JUDGMENT
(Cause No. 2:17-cv-01133 RSL) – 6
JCM6317.093/2832146x

WILSON SMITH COCHRAN DICKERSON
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

> …
> **Q:** Okay. And so your testimony was that [Plaintff] tried to go out the same door that Bob [Backstein] was standing in?
> **A:** Yes.
> **Q:** And what did he do in order to try and get by Bob?
> **A:** He ran into Bob with I assume the intention of pushing Bob aside.
> …
> **Q:** Okay. So [Plaintiff] got out of the chair, and he tried to run towards the door?
> **A:** Yes.
> **Q:** And Bob [Backstein] would not let him out the door?
> **A:** He ran right into Bob. Bob just grabbed him.

(Miller Decl., Ex. 2 at 43-45).

All Defendants then restrained Plaintiff onto the gurney. "[H]e became combative, but he ended up on top of one of the firefighters, and at that point he was restrained." (Miller Decl., Ex. 4 at 36).

Once Plaintiff was restrained on the gurney, White decided "we needed to call the police for an involuntary commitment to the hospital. … to cover all bases to make sure that legally what we were doing was okay." (Miller Decl., Ex. 2 at 49). White emphasized that "[a]n involuntary commitment is done with the police … If the police officer came and said no, you don't have grounds to do this, he shouldn't be restrained, shouldn't be going to the hospital, then he would have been turned loose and on his own." *Id.* at 61 & 64.

Plaintiff then refused to speak with anyone. "[B]y the end of the incident, he was not talking to [Defendants] at all." (Miller Decl., Ex. 3 at 41). Plaintiff confirmed his refusal to cooperate:

> **Q:** So no, you did not respond to any questions from Kent Fire, Tri-Med, or the Police Department?
> **A:** Yeah, yeah, yeah. After I was strapped down I stopped talking

(Miller Decl., Ex. 6 at 309). As Plaintiff was being taken to the ambulance, Kent Police Officer James Dorff arrived. (Miller Decl., Ex. 4 at 47).

DEFENDANT TRIMED AMBULANCE, LLC'S
MOTION FOR SUMMARY JUDGMENT
(Cause No. 2:17-cv-01133 RSL) – 7
JCM6317.093/2832146x



WILSON SMITH COCHRAN DICKERSON
901 Fifth Avenue, Suite 1700
Seattle, Washington 98164
Telephone: (206) 623-4100
Fax: (206) 623-9273

Officer Dorff attempted to speak with Plaintiff, but he remained uncooperative: "[H]e wouldn't talk. He was – just kind of [gave] a distant stare, like staring through you." (Miller Decl., Ex. 9 at 9). This lasted 20 to 30 minutes. *Id.* at 11. Additionally, witnesses informed Officer Dorff that Plaintiff was "not [in] his normal state of mind, not his normal self, that he appeared to be in pain, and then he gives me nothing, I have to make a judgment call that – that he needs help." *Id.* at 24.

Plaintiff's own uncooperativeness also factored into Officer Dorff's decision:

**Q:** If Mr. Nowell had spoken to you that day, would you have taken that evidence into account as well?
**A:** Absolutely.
**Q:** And to making your ultimate decision?
**A:** Sure. If he could show me that he was of sound mind and could properly care for himself, absolutely.
**Q:** But because he did not speak to you, you could not rely on anything from him. Is that accurate?
**A:** Correct.
…
**Q:** And if you thought Mr. Nowell was of sound mind, would you have ordered his release?
**A:** Absolutely.

*Id.* at 11, 15-16. Based on the entirety of the circumstances, Officer Dorff completed an involuntary commitment form because Plaintiff was "unable to care for self" and was experiencing "medical problems." (Miller Decl., Ex. 8).

Although Plaintiff was restrained prior to the involuntary commitment being ordered, Officer Dorff "wouldn't say that it's abnormal." (Miller Decl., Ex. 9 at 15). Officer Dorff confirmed that "at times it's necessary … to restrain a patient prior to calling law enforcement … to protect the patient from himself." *Id.* Dave White stated such a situation occurs approximately 20 times per year. (Miller Decl., Ex. 2 at 68). Further, if Officer Dorff

DEFENDANT TRIMED AMBULANCE, LLC'S
MOTION FOR SUMMARY JUDGMENT
(Cause No. 2:17-cv-01133 RSL) – 8
JCM6317.093/2832146x

WILSON SMITH COCHRAN DICKERSON
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

determined the involuntary commitment was not warranted, Plaintiff would have been immediately released. (Miller Decl., Ex. 2 at 64; Ex. 9 at 16).

After Officer Dorff issued the involuntary commitment, TriMed personnel transported Plaintiff to Auburn Medical Center pursuant to its contract with Kent RFA. (Miller Decl., Ex. 4 at 58). TriMed's Final 'Patient Care Report' confirms that Auburn Medical RN Kelly accepted transfer of Plaintiff at 11:58 a.m. on 06/08/2015. (Miller Decl., Ex. 10). This was TriMed's last interaction with Plaintiff prior to the filing of the Complaint.

## ISSUES PRESENTED

1. Should the Court dismiss Plaintiff's tort claims against TriMed when Washington's Involuntary Treatment Act ("ITA") exempts private agencies from liability when performing duties pursuant to the ITA, provided such duties were performed in good faith and without gross negligence, and there exists no evidence of bad faith or gross negligence on the part of TriMed?

2. Should the Court dismiss Plaintiff's 42 U.S.C. § 1983 Claims, which are only viable against private entities when acting under the color of state law, and TriMed is a private ambulance service not acting under the color of state law?

## LEGAL STANDARD

"Summary judgment is proper if the pleadings and evidence submitted in support of the motion show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Coca-Cola Co. v. Overland, Inc.,* 692 F.2d 1250, 1253 (9th Cir.1982); Fed.R.Civ.P. 56(c). Once the party moving for summary judgment meets the initial burden of showing the absence of such a genuine issue, *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F.2d 665, 668 (9th Cir.1980), the opponent must set forth specific facts showing there is one. Fed.R.Civ.P. 56(e); *Ruffin v. County of Los Angeles,* 607 F.2d 1276, 1280 (9th Cir.1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980). Evidence raising a genuine issue of material fact is that which is enough "to require a

DEFENDANT TRIMED AMBULANCE, LLC'S
MOTION FOR SUMMARY JUDGMENT
(Cause No. 2:17-cv-01133 RSL) – 9
JCM6317.093/2832146x

WILSON SMITH COCHRAN DICKERSON
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

jury or judge to resolve the parties' differing versions of the truth at trial," *Aydin Corp. v. Loral Corp.,* 718 F.2d 897, 902 (9th Cir.1983), *quoting First National Bank v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968); and we view that evidence in a light favorable to the opposing party. *Coca-Cola, Inc. v. Overland Co.,* 692 F.2d at 1253.

## SUMMARY OF LEGAL ARGUMENT

Plaintiff's claims against TriMed are subject to immediate dismissal. Because Plaintiff's restraint was pursuant to an authorized involuntary commitment, his claims are governed by Washington's Involuntary Treatment Act ("ITA"). RCW 71.05.120 of the ITA shields private agencies from civil liability when "performing duties pursuant to this chapter with regard to the decision of whether to … detain a person for evaluation and treatment: PROVIDED, That such duties were performed in good faith and without gross negligence." Because there is no evidence of bad faith or gross negligence, Plaintiff's tort claims of assault and battery, false imprisonment, and negligence against TriMed should be dismissed.

42 U.S.C. § 1983 claims against private entities are only sustainable when a private entity was acting "under the color of state law." *See, e.g., Riggio, infra.* Because TriMed is a private ambulance company that was not acting under the color of state law, and generally "ambulance services do not act under the color of state law," Plaintiff's civil rights claims are also subject to dismissal. *Lauderdale, infra.*

Lastly, Plaintiff's Complaint is facially insufficient. Plaintiff fails to plead gross negligence or bad faith (not that there is evidence of the same anyway) required to overcome Washington's ITA, and the Complaint fails to allege that TriMed was acting under the color

DEFENDANT TRIMED AMBULANCE, LLC'S
MOTION FOR SUMMARY JUDGMENT
(Cause No. 2:17-cv-01133 RSL) – 10
JCM6317.093/2832146x

WILSON SMITH COCHRAN DICKERSON
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

of state law.  Therefore, Plaintiff's Complaint is due to be dismissed both substantively and procedurally.

## I. BECAUSE THERE IS NO EVIDENCE TRIMED ACTED IN BAD FAITH OR WITH GROSS NEGLIGENCE, TRIMED IS SHIELDED FROM LIABILITY UNDER RCW 71.05.120

Plaintiff was restrained pursuant to the Involuntary Commitment Report form signed by Kent Police Officer James Dorff.  (Miller Decl., Ex. 8).  Therefore, Plaintiff's claims are governed by Washington's Involuntary Treatment Act (hereinafter "ITA"), codified at RCW 71.05.010, *et seq.*  RCW 71.05.010 and 71.05.012 set forth the intent of the ITA, the latter statute reading:

> **Legislative intent and finding.**
>
> It is the intent of the legislature **to enhance continuity of care for persons with serious mental disorders that can be controlled or stabilized** in a less restrictive alternative commitment.
>
> … the legislature intends to **encourage appropriate interventions at a point when there is the best opportunity to restore the person to or maintain satisfactory functioning.**

(emphasis added).  RCW 71.05.120 provides immunity to certain actors performing duties under the ITA:

> **Exemptions from liability.**
>
> (1) **No officer of a public or private agency**, nor … attending staff of any such agency … **shall be civilly or criminally liable for performing duties pursuant to this chapter** with regard to the decision of whether to admit, discharge, release, administer antipsychotic medications, or detain a person for evaluation and treatment: **PROVIDED, That such duties were performed in good faith and without gross negligence.**

DEFENDANT TRIMED AMBULANCE, LLC'S
MOTION FOR SUMMARY JUDGMENT
(Cause No. 2:17-cv-01133 RSL) – 11
JCM6317.093/2832146x

WILSON SMITH COCHRAN DICKERSON
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

(emphasis added). While the statute has been revised since July 18, 2015, the gross negligence standard has remained. *Id.* Washington defines this heightened standard as follows:

> Gross negligence is failure to exercise slight care. But this means not the total absence of care but care substantially or appreciably less than the quantum of care inhering in ordinary negligence. ***It is negligence substantially and appreciably greater than ordinary negligence.*** Ordinary negligence is the act or omission which a person of ordinary prudence would do or fail to do under like circumstances or conditions. ***There is no issue of gross negligence without substantial evidence of serious negligence.***

*Whitehall v. King Cty.,* 139 Wash. App. 1072 (2007) (citing *Kelley v. Dept. of Corrections,* 104 Wn. App. 328, 333, 17 P.3d 1189, 1192 (2000)) (emphasis added). While a determination of gross negligence is generally a question of fact, it is proper for the Courts to reach this decision when "there is no evidence suggesting [Defendants] acted without good faith or with gross negligence." *Overly v. NAHC of Washington, Inc.,* 106 Wash. App. 1053 (2001).

As applied to the ITA, "even an assessment under Washington's Involuntary Treatment Act that 'was incomplete and unreasonable' would not rise to the level of gross negligence*.*" *Jackson v. City of Mountlake Terrace,* No. C16-1282JLR, 2017 WL 841751, at *5 (W.D. Wash. Mar. 3, 2017) (citing *Estate of Davis v. State, Dep't of Corr.,* 113 P.3d 487, 491-92 (Wash. 2005)).

TriMed had two personnel on scene: Scott McClaine and Luis Szarko. (Miller Decl., Ex. 10). Neither made the decision to transport Plaintiff, and Mr. Szarko has no independent recollection of the incident. (Miller Decl., Ex. 5 at 10). Mr. McClaine does recall the incident, and observed that Plaintiff "was orientated to self only." (Miller Decl., Ex. 4 at 29). As he explained, "[i]n this case, he only knew who he was. He didn't know where he was or

DEFENDANT TRIMED AMBULANCE, LLC'S
MOTION FOR SUMMARY JUDGMENT
(Cause No. 2:17-cv-01133 RSL) – 12
JCM6317.093/2832146x

WILSON SMITH COCHRAN DICKERSON
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

what was going on or who the president was." *Id.* Once Kent RFA made the decision to transport Plaintiff, McClaine described him as combative: "We were trying to get the patient to walk to our stretcher. He walked out of the office, and I don't remember exactly how he became combative, but he ended up on top of one of the firefighters, and at that point he was restrained." *Id.* at 36. Once restrained, Plaintiff refused to speak to any personnel, "[h]e never spoke to me in the back of the ambulance." *Id.* at 55. Plaintiff cannot point to any conduct of Mr. Szarko or Mr. McClaine that rises to the level of gross negligence or bad faith.

TriMed played no role in determining whether Plaintiff should be restrained and ultimately transported; "[t]hey don't make that decision." (Miller Decl., Ex. 2 at 68). TriMed had limited interaction with Plaintiff, as Kent RFA acted as "first responder … and perform[ed] triage and interrogation of [Plaintiff]." (Miller Decl., Ex. 1). Further, it was incident commander White—"the Kent RFA person in charge of the emergency response at an incident"—that ultimately made the decision to transport Plaintiff. *Id.*, (Miller Decl., Ex. 2 at 42). Thus, any argument Plaintiff should *not* have been restrained, or *should* have been allowed to drive, is inapplicable as to TriMed. There is no evidence that TriMed acted negligently in providing transport services, and certainly no evidence of "negligence substantially and appreciably greater than ordinary negligence." *Whitehall, supra.*

To be clear, TriMed makes no allegations against Kent RFA and the decision to transport Plaintiff. Notwithstanding TriMed's limited role, the following evidence is indisputable:

- Plaintiff has a history of TIA that was precipitated by chest pains (Miller Decl., Ex. 6 at 27-29);
- Plaintiff was experiencing chest pains the morning of the incident (*Id.* at 80);
- Co-workers witnessed Plaintiff in obvious discomfort (Miller Decl., Ex. 7 at 9);

DEFENDANT TRIMED AMBULANCE, LLC'S
MOTION FOR SUMMARY JUDGMENT
(Cause No. 2:17-cv-01133 RSL) – 13
JCM6317.093/2832146x

WILSON SMITH COCHRAN DICKERSON
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

- Plaintiff was lethargic and slurring his words while speaking with Kent RFA officials (Miller Decl., Ex. 3 at 23; Ex. 4 at 26);
- Despite passing by numerous schools along his route, Plaintiff believes he should have been allowed to drive home that day (Miller Decl., Ex. 6 at 101 and 290);
- If Plaintiff was released, he would have driven home that day, putting others at risk. *Id.*

Last, if Plaintiff had cooperated with Officer Dorff, and "[i]f he could show me that he was of sound mind and could properly care for himself," then Officer Dorff would *not* have ordered the involuntary commitment. (Miller Decl., Ex. 9 at 11).

Only truly egregious behavior by a defendant overcomes the gross negligence or bad faith standard of the ITA. In *Rawson v. Recovery Innovations, Inc.,* the Court found evidence of gross negligence when it was alleged that "Defendants forced [Plaintiff] to take antipsychotic medication shortly after his arrival despite conducting only a cursory mental health evaluation." 2017 WL 4811652, at *4. There is no similar evidence here. Even if Plaintiff could arguably show TriMed's actions were "incomplete and unreasonable," his claims still fail under the ITA—"even an assessment under Washington's Involuntary Treatment Act that 'was incomplete and unreasonable' would not rise to the level of gross negligence*.*" *Jackson, supra.* Thus, Plaintiff's tort claims are barred by the ITA.

## II. TRIMED, AS A PRIVATE AMBULANCE COMPANY, WAS NOT ACTING UNDER THE COLOR OF STATE LAW AND IS THEREFORE NOT SUBJECT TO SECTION 1983 CLAIMS

TriMed is a private, limited liability corporation that operates independent from the State of Washington. (Miller Decl., Ex. 1). Because of its status as a private entity, Plaintiff must show that TriMed acted under the color of state law to maintain his section 1983 claim. *Riggio v. Bank of Am. Nat'l Tr. & Sav. Ass'n, 3*1 F. App'x 505, 506 (9th Cir. 2002). However, "private parties do not generally act under color of state law for § 1983 purposes." *Yan Sui v.*

DEFENDANT TRIMED AMBULANCE, LLC'S
MOTION FOR SUMMARY JUDGMENT
(Cause No. 2:17-cv-01133 RSL) – 14
JCM6317.093/2832146x

WILSON SMITH COCHRAN DICKERSON
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

*Southside Towing,* 582 F. App'x 731, 731 (9th Cir. 2014) (internal citations omitted). Taken a step further, "[n]ormally, private … ambulance services do not act under the color of state law." *Lauderdale v. Permanente Med. Grp., Inc.,* 845 F.2d 1029, 1029 (9th Cir. 1988).

A private entity acts under the color of state law only when "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself*." Angelone v. Furst,* No. C07-5538RJB-KLS, 2008 WL 4763351, at *2 (W.D. Wash. Sept. 19, 2008) (internal citations omitted). Put more succinctly by the Ninth Circuit in 2011, "state action arises from 'pervasive entwinement to the point of largely overlapping identity.'" *Kuba v. Sea World, Inc.,* 428 F. App'x 728, 731 (9th Cir. 2011) (internal citations omitted).

The 'challenged action' in this case is TriMed's transporting of Plaintiff at the direction of Kent RFA. This was TriMed's only action relative to Plaintiff—they did not make the involuntary commitment decision, and arrived on scene *after* Dave White made this determination. (Miller Decl., Ex. 2 at 68). "They [TriMed] don't make that decision." *Id.*

There exists no evidence that TriMed's transportation of Plaintiff was performed under the color of state law; there is nothing to suggest that "the state is significantly involved in the specific activity of which the party complains." *Lauderdale,* 845 F.2d at 1029 (citing *Watkins v. Mercy Med. Center,* 520 F.2d 894, 896 (9th Cir.1975)). In *Lauderdale,* the Ninth Circuit determined that the ambulance company was operating under the color of state law because it was "under contract with the Alameda County Emergency Medical Services Agency to provide **advanced** life support services." *Id.* (emphasis added). The Contract in this matter calls for TriMed to provide **basic** life support services, while Kent RFA provides advanced life support services. (Miller Decl., Ex. 1).

DEFENDANT TRIMED AMBULANCE, LLC'S
MOTION FOR SUMMARY JUDGMENT
(Cause No. 2:17-cv-01133 RSL) – 15
JCM6317.093/2832146x



WILSON SMITH COCHRAN DICKERSON

901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

The Ninth Circuit again focused on the existence of a contract with the forum state in *Lopez v. Dep't of Health Servs.*:

> [The] Ambulance Service [is] under contract with the state … to provide medical services to indigent citizens. These allegations are sufficient to support a section 1983 action because under either the joint action or the government nexus analysis they set forth a claim that defendant[ ] [ambulance company] act[ed] under color of state law

939 F.2d 881, 883 (9th Cir. 1991). Both *Lauderdale* and *Lopez* determined an ambulance company acted under the color of state law because of a contract with the forum state. TriMed has no such contract with the State of Washington or any related entity.

The only relevant contract in this matter is between TriMed and Kent RFA. (Miller Decl., Ex. 1). The subject Contract specifically identifies Kent RFA as the first responder to perform triage and interrogation of all patients, and further states "Advance Life Support ("ALS") services within the RFA are provided by King County Medic 1." *Id.* The only duties imposed on TriMed under this contract are "to provide Basic Life Support ("BLS") *transport services* 24 hours per day, 365 days per year within the primary coverage area." *Id.* (emphasis added).

TriMed anticipates Plaintiff may argue that because he was restrained pursuant to an involuntary commitment authorized by the Kent Police Department, TriMed acted under the color of state law. However, in *Jackson v. City of Mountlake Terrace,* cited above, this very Court reached two findings: "Defendants are not state actors for purposes of a claim under 42 U.S.C. § 1983 [and] [u]nder RCW 71.05.120(1) … Defendants are immune from this claim." 2017 WL 841751, at *4-5. Because TriMed did not act under the color of state law while transporting Plaintiff, his 1983 claims also warrant dismissal.

DEFENDANT TRIMED AMBULANCE, LLC'S
MOTION FOR SUMMARY JUDGMENT
(Cause No. 2:17-cv-01133 RSL) – 16
JCM6317.093/2832146x

WILSON SMITH COCHRAN DICKERSON
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

## III. PLAINTIFF'S COMPLAINT, AS DRAFTED, IS PROCEDURALLY INSUFFICIENT TO SUPPORT HIS CLAIMS

Notwithstanding the above arguments, Plaintiff's Complaint is facially insufficient to maintain his claims. Regarding the Section 1983 claims, Plaintiff fails to **allege** facts that TriMed was acting under the color of state law. (*See* Complaint). Regarding the remaining state law tort claims, Plaintiff fails to **allege** either gross negligence or bad faith, and therefore cannot overcome Washington's ITA. *Id.*

### A. Plaintiff's 42 U.S.C. §1983 Claims are Improperly Plead

"To make out a cause of action under section 1983, a plaintiff must plead that the defendants were acting under color of state law." *Hill v. Washington State Dep't of Corr.,* 628 F. Supp. 2d 1250, 1266 (W.D. Wash. 2009) (citing *Gibson v. United States,* 781 F.2d 1334, 1338 (9th Cir.1986)). The Ninth Circuit routinely upholds dismissals of 1983 claims where a plaintiff fails to plead sufficient facts alleging defendants acted under the color of state law. *See, e.g. Travis v. Couture,* 385 F. App'x 615, 616 (9th Cir. 2010) (internal citations omitted) ("[Plaintiff's] § 1983 claim was properly dismissed because [Plaintiff] failed to plead sufficient facts to establish that the defendants were acting under color of state law.").

Plaintiff's Complaint largely consists of an inflammatory narrative that has been disputed by both Defendants and independent witnesses. (*See* Complaint). The only time the words "color of law" appear throughout the Complaint is in paragraph 19, in which Plaintiff makes the conclusory statement "[a]ll Defendants by their acts and omissions set forth above **under the color of law,** without legal justification wrongfully restrained, seized the plaintiff …" *Id.* at ¶19 (emphasis added). Notwithstanding the absence of 'color of *state* law,' the Complaint contains zero allegations that TriMed's actions "may be fairly treated as that of the

DEFENDANT TRIMED AMBULANCE, LLC'S
MOTION FOR SUMMARY JUDGMENT
(Cause No. 2:17-cv-01133 RSL) – 17
JCM6317.093/2832146x

WILSON SMITH COCHRAN DICKERSON
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

state itself, [or] the state has exercised coercive power or provided significant encouragement, or the private entity has exercised powers that are traditionally the exclusive prerogative of the state." *Keyes v. Huckleberry House,* 936 F.2d 578, 578 (9th Cir. 1991) (internal citations omitted).

Without these assertions, Plaintiff's section 1983 should be dismissed. As recently as September of 2017, Chief United States District Judge Ricardo Martinez reached that conclusion in this same forum:

> Defendants also move to dismiss, arguing, *inter alia*, that a § 1983 claim cannot be brought against them because Plaintiff did not plead that they acted under the color of state law and because they are private entities. ... The Court agrees with Defendants. ... Plaintiff has thus failed to state a claim upon which relief can be granted.

*Robinson v. Seattle Police Dep't,* No. C17-1187RSM, 2017 WL 4122583, at *2 (W.D. Wash. Sept. 18, 2017).

### B.  *Plaintiff's Complaint Does Not Overcome Washington's ITA*

Plaintiff's Complaint fails to make any allegations of gross negligence or bad faith required to overcome Washington's ITA. RCW 71.05.120(1). This forum has dismissed Complaints for similar pleading deficiencies:

> Although Plaintiffs allege that Medical Center Defendants were negligent, ***Plaintiffs do not allege that Medical Center Defendants acted either in bad faith or with gross negligence as required to overcome the immunity statute.*** Further, Plaintiffs allege no facts to support a reasonable inference of either gross negligence or bad faith. ... even an assessment under Washington's Involuntary Treatment Act that "was incomplete and unreasonable" would not rise to the level of gross negligence and would be barred ... Under RCW 71.05.120(1), Medical Center Defendants are immune from this claim, and accordingly, the court dismisses it.

*Jackson,* 2017 WL 841751, at *5 (emphasis added). Similarly, "conclusory allegations of law are insufficient [to] support a reasonable inference that Defendants acted with gross

DEFENDANT TRIMED AMBULANCE, LLC'S
MOTION FOR SUMMARY JUDGMENT
(Cause No. 2:17-cv-01133 RSL) – 18
JCM6317.093/2832146x

WILSON SMITH COCHRAN DICKERSON
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

negligence or bad faith." *Rawson,* 2017 WL 4811652, at *3–4. Thus, Plaintiff's tort claims are barred procedurally.

## CONCLUSION

This is the precise scenario contemplated by the legislature in drafting the ITA. Multiple officials determined that Plaintiff was unable to care for himself, but he still wanted to drive himself home and put others at risk. Based on the totality of the circumstances at the scene, Kent RFA decided Plaintiff needed further medical intervention, resulting in the involuntary commitment by Officer Dorff. TriMed played no part in this determination and only provided transportation services pursuant to its contract with Kent RFA.

Plaintiff has no evidence by TriMed of gross negligence or bad faith required to overcome the immunity provision of the ITA, and has no evidence that TriMed acted under the color of state law. Plaintiff's Complaint is also improperly plead.

TriMed requests this Court summarily dismiss all of Plaintiff's claims asserted against TriMed and GRANT Defendant's Motion for Summary Judgment.

DATED this 19th day of July, 2018.

By: *s/ J. C. Miller*
By: *s/ Dylan E. Jackson*
J. C. Miller, WSBA No. 51932
Dylan E. Jackson, WSBA No. 29220
Wilson Smith Cochran Dickerson
901 5th Avenue, Suite 1700
Seattle, WA 98164-2050
Phone: 206-623-4100
Fax: 206-623-9273
Email: miller@wscd.com; Jackson@wscd.com
Of Attorneys for Defendant TriMed Ambulance

DEFENDANT TRIMED AMBULANCE, LLC'S
MOTION FOR SUMMARY JUDGMENT
(Cause No. 2:17-cv-01133 RSL) – 19
JCM6317.093/2832146x

WILSON SMITH COCHRAN DICKERSON
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

# CERTIFICATE OF SERVICE

The undersigned certifies that under penalty of perjury under the laws of the State of Washington that on the below date I caused to be served via CM/ECF the foregoing document on:

**Attorney for Plaintiff**
Harold H. Franklin, Jr.
Attorney at Law
459 Seneca Ave. N.W.
Renton, WA 98057
haroldfranklin1@comcast.net

**Attorney Defendant Kent Fire Department Regional Fire Authority aka Puget Sound Regional Fire Authority**
Ann E. Trivett
Megan Maria Coluccio
Thomas P. Miller
Christie Law Group, PLLC
2100 Westlake Ave. N., Ste 206
Seattle, WA 98109-5802
ann@christielawgroup.com
megan@christielawgroup.com
tom@christielawgroup.com

**SIGNED** this 19th day of July, 2018, at Seattle, Washington.

*s/ Connie Enns Jory*
Connie Enns Jory, Legal Secretary
Wilson Smith Cochran Dickerson

DEFENDANT TRIMED AMBULANCE, LLC'S
MOTION FOR SUMMARY JUDGMENT
(Cause No. 2:17-cv-01133 RSL) – 20
JCM6317.093/2832146x



WILSON SMITH COCHRAN DICKERSON
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273