IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

El-Fatih Nowell,

           Plaintiff,

vs.

TRIMED AMBULANCE, LLC and the KENT FIRE DEPARTMENT REGIONAL FIRE AUTHORITY aka PUGET SOUND REGIONAL FIRE AUTHORITY and JOHN DOES 1-4,

           Defendants.

No. 2:17-CV-01133 RSL

PLAINTIFF'S RESPONSE IN OPPOSITION TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. STATEMENT OF FACTS

On June 18, 2015, El Fatih Nowell was an employee with the Xerox Corporation as a cruise agent. After being at work for a couple of hours, Mr. Nowell felt a pain in his chest and in his right foot. See Dec. of Harold Franklin Exh A. Mr. Nowell had an earlier episode involving chest pains in 2013. At that time, Mr. Nowell called 911 because he was experiencing chest pains followed by numbness and loss of consciousness and he was taken to the hospital in 2013. However, Mr. Nowell stated that the symptoms he was experiencing in 2013 were not the same symptoms he was experiencing in 2015. Mr. Nowell stated that the chest pains he experienced in

2015 were not as severe as the chest pains he was experiencing in 2013. Dec. of Harold Franklin Exh A. Mr. Nowell's observation was later corroborated by the Dr. Sean Baxter at the Auburn Medical Center as well as the Defendants in this case. Dec. of Harold Franklin Exh C. Carol Forehand a manager at Xerox saw that Mr. Nowell was in pain and asked if he was alright. Mr. Nowell told her that he had some pain in his chest area and in his right foot. Ms. Forehand asked Mr. Nowell if he wanted her to call the medics. Mr. Nowell said he did not want her to call the medics and that he would work through the pain and finish his work shift to keep his perfect attendance. Dec. of Harold Franklin Exh A. Ms. Forehand told Mr. Nowell that he could come into her office and rest awhile. Shortly after that, Mr. Forehand called 911 even though Mr. Nowell asked her not to. Dec. of Harold Franklin Exh A and B.

The Kent Fire Regional Fire Authority (Kent RFA) arrived on the scene along with Tri-Med EMTs. They checked Mr. Nowell's blood pressure and his vital signs. Mr. Nowell cooperated with the Kent Fire throughout the initial process. The Kent RFA staff stated that there were no major vital sign issues, but they wanted to take them to the hospital to have a doctor evaluate him. Dec. of Harold Franklin Exh A. Mr. Nowell explained to the Kent Fire Staff that he did not have any insurance yet and that he would follow up with his own doctor. The Kent RFA staff refused to listen to Mr. Nowell and said they were taking him anyway. Mr. Nowell asked Ms. Forehand if he could call his doctor on the phone. He spoke to the receptionist and she said the doctor was not available. While Mr. Nowell was on the phone, the lead Kent RFA Staff member David White yelled while Mr. Nowell was on his cell phone, "whoever, is on the phone we are taking him in to the hospital". Dec. of Harold Franklin Exh A. Mr. Nowell told the receptionist that he would call back later and ended the call with his doctor's office. He told the Kent RFA staff that he was going home and he would speak to his doctor later. Then Mr. White, the lead member of the Kent RFA staff said they were not going to let Mr. Nowell leave. Mr. Nowell appealed to Ms. Forehand to tell the Kent RFA staff and the Tri-

PLAINTIFF'S RESPONSE TO
MOTION FOR SUMMARY
JUDGMENT- 2

HAROLD H. FRANKLIN, JR. WSBA #20486
459 Seneca Avenue NW
Renton, WA 98057
(206)617-7031

Med EMTs that he did not want to go to the hospital and that he did not have any insurance. Ms. Forehand only responded by saying she was sorry. Mr. White told Mr. Nowell that they were going to take control over him. Mr. Nowell stated in response to Mr. White that he had rights and he responded to Mr. Nowell and told him that he did not have any rights and that he did not have a choice. Dec. of Harold Franklin Exh A. Mr. Nowell saw hatred in the Mr. White's eyes and he also saw that spit was flying out of Mr. White's mouth when he spoke to Mr. Nowell. Mr. Nowell still felt intimidated and said he should be able to go home because they checked his vital signs and there were no health risks. To deescalate the situation, Mr. Nowell tried to walk away from the area. He heard the Mr. White say, "Get him" and both the Kent RFA staff and the EMTs from Tri-Med tackled him to the ground and put him in a choke hold lifted him up and threw him onto the stretcher and strapped him down. As the five EMTs restrained Mr. Nowell, he felt a pop in his right shoulder and he also felt pain in his left wrist. Dec. of Harold Franklin Exh A and B. Mr. Nowell was wheeled out of the building and placed in the back of the Tri-Med vehicle. Shortly after being put in the Tri-Med vehicle, a Kent Police officer arrived and Mr. White told the police officer that he needed the officer to make out an involuntary commitment report because Mr. Nowell did not want to go to the hospital. Police tried to speak to Mr. Nowell, but Mr. Nowell did not speak to him because he was already shocked about what he had gone through. The police officer checked Mr. Nowell for weapons and drugs but he did not find any thing on him. The Tri-Med staff also checked Mr. Nowell's blood sugar and they said that it was 85 and okay. Dec. of Harold Franklin Exh A. After the officer left, the Tri-Med personnel closed the door and transported Mr. Nowell to Auburn Medical Center. While in transit to the hospital, the Tri-Med EMT in the back of the vehicle with Mr. Nowell told Mr. Nowell that if he didn't talk to him he would make it harder on himself. Mr. Nowell did not respond. The Tri-Med staff member than grabbed Mr. Nowell by the face and pulled his face close to his and yelled, "talk to me, say something" while shaking Mr. Nowell's face. Dec. of

PLAINTIFF'S RESPONSE TO
MOTION FOR SUMMARY
JUDGMENT- 3

HAROLD H. FRANKLIN, JR. WSBA #20486
459 Seneca Avenue NW
Renton, WA 98057
(206)617-7031

Harold Franklin Exh A. Mr. Nowell's did not respond. The Tri-Med staff then began to search through Mr. Nowell's pockets and pulled out his cell phone. He called Mr. Nowell's wife, something Mr. Nowell tried to do before his was attacked, and told her they were taking Mr. Nowell to Auburn Medical Center.

When Mr. Nowell arrived at Auburn Medical Center, although he still declined treatment, Dr. Sean T. Baxter, M.D., stated that Mr. Nowell, exhibited reasonable judgment, he was not delusional or psychotic. According to his wife his speech was not slurred but it was baseline and so was his mental status. He was not suicidal or homicidal and Dr. Baxter did not believe he was a threat to himself or anyone else. This was Dr. Baxter's observation less then two and one-half hours after he first encountered Kent Fire and Tri-Med staff. See Dec. of Harold Franklin Exh C. Mr. Nowell was allowed to leave the hospital and make an appointment with his own doctor as he requested to do before his was attacked by the Defendants.

A. <u>List of Disputed Facts</u>

1. Mr. Nowell denies that he was combative and he states that before he was attacked by the Kent RFA and Tri-Med personnel, he was already in the hall area and did not attempt to run over anyone from Mr. Forehand's office. Mr. Sibanda corroborates Mr. Nowell's version of the facts. See Dec. of Harold Franklin Exh A and B. The Defendants claim that Mr. Nowell was combative and that he tried to run over Mr. Backstein one of the Kent RFA personnel, while he was in Ms. Forehand's office.

2. Mr. Nowell states that he was capable of making medical decisions on his own and was not a threat to himself and others. He testifies that the Kent RFA personnel confirmed that his vital signs were within the normal range and he called his doctor to try and make an appointment with her office and he tried to call his wife but was prevented from doing so by the Defendants. See Dec. of Harold Franklin Exh A. Also Dr. Baxter confirmed that Mr. Nowell exhibited reasonable judgment, he was not delusional or

PLAINTIFF'S RESPONSE TO
MOTION FOR SUMMARY
JUDGMENT- 4

HAROLD H. FRANKLIN, JR. WSBA #20486
459 Seneca Avenue NW
Renton, WA 98057
(206)617-7031

psychotic, was not suicidal or homicidal and Dr. Baxter did not believe Mr. Nowell was a threat to himself or anyone else. See Dec. of Harold Franklin Exh C. The Defendants claim that Mr. Nowell was not capable of making medical decisions on his own and that he was a danger to himself and others.

3. Mr. Nowell believes that they used excessive and unnecessary force and injured his shoulder as a result of this excessive and unnecessary force. The force was unnecessary because he was trying to make arrangements with his wife to go home and to go see his own personal physician when he was attacked. The Defendants claim that they used reasonable force to restrain Mr. Nowell.

## II. AUTHORITY

### A. SUMMARY JUDGMENT STANDARDS

Summary judgment is required "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) (2007); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). The substantive law identifies which facts are material. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202,(1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; Ellison, 85 F.3d at 189. "[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes

PLAINTIFF'S RESPONSE TO
MOTION FOR SUMMARY
JUDGMENT- 5

HAROLD H. FRANKLIN, JR. WSBA #20486
459 Seneca Avenue NW
Renton, WA 98057
(206)617-7031

demonstrate the absence of a genuine issue of material fact ." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046-1047 (5th Cir. 1996). If the moving party meets its initial burden, the nonmoving party "must – by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmovant's burden may not be satisfied by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Warfield, 436 F.3d at 557 (quoting *Freeman v. Texas ep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004)). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. 2505. There is sufficient disagreement in this case that requires that this case be submitted to a jury or trier of fact and therefore summary judgment in not appropriate in this case.

B. <u>Kent Fire Acted Under Color of Law</u>

To establish a prima facie case under 42 U.S.C. §1983, Mr. Nowell must demonstrate proof that (1) the action occurred "under color of law" and (2) the action resulted in a deprivation of a constitutional right or a federal statutory right. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). The purpose of section 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights. See *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). "The

PLAINTIFF'S RESPONSE TO
MOTION FOR SUMMARY
JUDGMENT- 6

HAROLD H. FRANKLIN, JR. WSBA #20486
459 Seneca Avenue NW
Renton, WA 98057
(206)617-7031

traditional definition of acting under color of state law requires that the defendant in a 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941); see also *Griffin v. Maryland*, 378 U.S. 130, 135 (1964). "It is firmly established that a defendant in a section 1983 suit acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West*, 487 U.S. at 49-50 (citations omitted).

The acts, therefore, must be performed while the officer is acting, purporting, or pretending to act in the performance of his or her official duties. See *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 838 (9th Cir. 1996); see also *Monroe v. Pape*, 365 U.S. 167, 171 (1961), overruled on other grounds by *Monell v Department of Social Services*, 436 U.S. 658 (1978) ("There can be no doubt . . . that Congress has the power to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it."). For example, in *Screws v. United States*, 325 U.S. 91 (1945), the Supreme Court found that color of law was present when a sheriff, policeman, and special deputy beat a young man to death during the course of an arrest, even though the officers' actions were unauthorized and beyond the scope of their duties. Id. at 92-93. The Court explained that:

> It is clear that under `color' of law means under `pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded. Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it. If, as suggested, the statute was

PLAINTIFF'S RESPONSE TO
MOTION FOR SUMMARY
JUDGMENT- 7

HAROLD H. FRANKLIN, JR. WSBA #20486
459 Seneca Avenue NW
Renton, WA 98057
(206)617-7031

designed to embrace only action which the State in fact authorized, the words 'under color of any law' were hardly apt words to express the idea.

Here, it is undisputed that employees of the Kent RFA were all authorized and expected as part of their official duties, to respond to 911 calls and give treatment to the person they are dispatched to treat. See *United States v. Causey*, 185 F.3d 407, 443(5th Cir. 1999). Because their status as employees of the Kent RFA enabled them to access and treat Mr. Nowell they invoked the powers of their office to accomplish the offensive act of assaulting and restraining and falsely imprisoning Mr. Nowell. Therefore, however improper the employees of the Kent RFA's actions were, they clearly related to the performance of their official duties. See *Dang Vang v. Vang Xiong X. Toyed*, 944 F.2d 476, 480 (9th Cir. 1991).

### C. Tri-Med Acted Under Color of State Law

Action taken by a private individual may be under color of state law' where there is significant' state involvement in the action." *Lopez v. Dept. of Health Serv.*, 939 F.2d 881, 883 (9th Cir. 1991). The extent of state involvement in the action is <u>typically a question of fact</u>. *Id.* The Fourteenth Amendment is directed at the States and "can be violated only by conduct that may be fairly characterized as state action." *Lugar v. Edmondson Oil*, 457 U.S. 922 (1982). "Careful adherence to the state action requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power. It also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." *Id.* at 936. "While the principal that private action is immune from the restrictions of the Fourteenth Amendment is well established and easily stated, the question whether particular conduct is private', on the one hand, or state action', on the other, frequently admits of no easy answer." *Jackson v. Metropolitan Edison, Co.*, 419 U.S. 345, 349-50 (1974).

A private actor, acting in accord with a state statute or procedure does not necessarily equate to state action. See for example *Hamilton v. Home Sales Inc.*, 588 Fed.Appx.698 (9th Cir. 2014) ("bank using a non-judicial foreclosure procedure provided by state law was not a government actor under § 1983); *Robert S. v. Stetson School, Inc.*, 256 F.3d 159 (3rd Cir. 2001)(private school, under State regulation, that "worked in close concert with state and local governments" was not a state actor for liability purposes under § 1983"). Additionally, conclusory allegations that a private actor and state actor conspired are insufficient to state a claim under Section 1983. *Simmons v. Sacramento County Court*, 318 F.3d 1156, 1161 (9th Cir. 2003)("Plaintiff's conclusory allegations that the lawyer was conspiring with state officers to deprive him of due process are insufficient.").

Tri-Med has admitted that they have a contract with the Kent Regional Fire Authority to provide Basic Life Support transport services 24 hours a day, 365 days per year within the primary coverage area. See Miller Decl, Ex. 1. Also in *Lopez v. Dept. of Health Serv.* the court specifically states:

> Here the district court's sua sponte dismissal was improper because Lopez's complaint alleges that defendants Maryvale Samaritan Hospital ("Maryvale") and Southwest Ambulance Service ("Southwest") are under contract with the state of Arizona to provide medical services to indigent citizens. These allegations are sufficient to support a section 1983 action because under either the joint action or the government nexus analysis they set forth a claim that defendants Southwest and Maryvale act under color of state law. See Edmonson, 111 S.Ct. at 2082-84; West, 487 U.S. at 54, 108 S.Ct. at 2258; Dennis, 449 U.S. at 27, 101 S.Ct. at 186; Jackson, 419 U.S. at 351, 95 S.Ct. at 453.

While Tri-Med tries to make a distinction between providing basic life support services versus advance life support services, this distinction in without merit. Their own document shows that they were under contract with the Kent RFA and therefore under the above authority, they were acting under color of state law and therefore a section 1983 action was properly made against

PLAINTIFF'S RESPONSE TO
MOTION FOR SUMMARY
JUDGMENT- 9

HAROLD H. FRANKLIN, JR. WSBA #20486
459 Seneca Avenue NW
Renton, WA 98057
(206)617-7031

them.

D. <u>Mr. Nowell has set forth a claim under the Fourth, Fifth and Fourteenth Amendments</u>

In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. *See id.* at 140 ("The first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged"). In most instances, that will be either the Fourth [109 S.Ct. 1871] Amendment's prohibition against unreasonable seizures of the person or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct. The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized "excessive force" standard. *See Tennessee v. Garner, supra,* at 7-22 (claim of excessive force to effect arrest analyzed under a Fourth Amendment standard); *Whitley v. Albers,* 475 U.S. 312, 318-326 (1986) (claim of excessive force to subdue convicted prisoner analyzed under an Eighth Amendment standard). As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *See Scott v. United States,* 436 U.S. 128, 137-139 (1978); *see also Terry v. Ohio, supra,* at 21 (in analyzing the reasonableness of a particular search or seizure, "it is imperative that the facts be judged against an objective standard"). An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional. *See Scott v. United States, supra,* at 138, citing *United States v. Robinson,* 414 U.S. 218 (1973).

The Plaintiff has alleged that the Defendants have violated his Fourth, Fifth and

PLAINTIFF'S RESPONSE TO
MOTION FOR SUMMARY
JUDGMENT- 10

HAROLD H. FRANKLIN, JR. WSBA #20486
459 Seneca Avenue NW
Renton, WA 98057
(206)617-7031

Fourteenth amendment rights under the United States constitution.

The relevant portions of the Fourth, Fifth and the Fourteenth Amendments respectively, state as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...

Fourth Amendment

> ...nor be deprived of life, liberty, or property, without due process of law;...

Fifth Amendment.

> ...nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Fourteenth Amendment sec 1.

As set forth above, Mr. Nowell was jumped upon by five people, three employees of the Kent RFA and two from Tri-Med. The Defendants try and justify their actions by stating that Mr. Nowell was combative. This is not the case. Mr. Nowell cooperated with the Defendants throughout the process until they assaulted him. He was examined by the Kent RFA employees, who found that all his vital signs were in the normal range. See Dec. of Harold Franklin Exh. A and B. He gave them personal information about his condition and he answered all their questions. In fact, they stated that they wanted to take Mr. Nowell to Hospital as a precautionary measure. See Dec. of Harold Franklin Exh A. The only combative person in this incident was Mr. Dave White who became overbearing, abusive and combative toward Mr. Nowell. Mr. White stated that Mr. Nowell did not have a choice nor the right to determine whether or not he would go to the hospital. See Dec. of Harold Franklin Exh. A and B. Mr. White stated that he was taking charge of Mr. Nowell. See Dec. of Harold Franklin Exh A. When Mr. Nowell was trying to talk to the staff at his doctor's office, Mr. White yelled in the back ground that he was

PLAINTIFF'S RESPONSE TO
MOTION FOR SUMMARY
JUDGMENT- 11

HAROLD H. FRANKLIN, JR. WSBA #20486
459 Seneca Avenue NW
Renton, WA 98057
(206)617-7031

taking Mr. Nowell to the hospital. See Dec. of Harold Franklin Exh A. Mr. White would not allow Mr. Nowell to call his wife. See Dec. of Harold Franklin Exh A and B. Finally Mr. White instructed all the emergency personnel both Kent RFA and Tri-med to "get" Mr. Nowell and they jumped on him and tackled him injuring his shoulder and his wrist. These actions on the part of the Defendants were unreasonable for the following reasons. First, the Defendants had already said that Mr. Nowell's vital signs were in the normal range and therefore Mr. Nowell was not in any immediate danger based on their own assessment and it was unreasonable for the Defendants to force him to go to the hospital against his will when he was capable of making that decision on his own. Second, after making a determination that Mr. Nowell's vital signs were in the normal range, it was Mr. Nowell's right to determine whether he needed to go to the hospital or not and it was unreasonable for the Defendants to force Mr. Nowell to go to the hospital given that he was not in any immediate danger.

Therefore, based on the foregoing, the Defendants acted unreasonably by assaulting Mr. Nowell and forcing him to go the hospital when Mr. Nowell was in no immediate danger, he was capable of making decisions about his treatment on his own and he was not a danger to himself or to others. Furthermore, by assaulting, battering and falsely imprisoning Mr. Nowell, the Defendants violated Mr. Nowell's Fourth, Fifth and Fourteenth Amendment rights to be free from unreasonable seizure and by being deprived of liberty without due process of law.

E. Mr. Nowell has set forth a claim for Assault and Battery against Kent and Tri-Med

A "battery" is "'[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such a contact, or apprehension that such a contact is imminent.'" *McKinney v. City of Tukwila*, 103 Wn.App. 391, 408, 13 P.3d 631 (2000) (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 9, at 39

PLAINTIFF'S RESPONSE TO
MOTION FOR SUMMARY
JUDGMENT- 12

HAROLD H. FRANKLIN, JR. WSBA #20486
459 Seneca Avenue NW
Renton, WA 98057
(206)617-7031

(5th ed.1984)). Similarly, an assault is any act of such a nature that causes apprehension of a battery. *McKinney*, at 408 (citing Keeton § 10, at 43). To prove "intent, " a plaintiff must show that the defendant's act was "done *for the purpose* of causing the contact or apprehension or *with knowledge . . .that such contact or apprehension is substantially certain to be produced*." *Garratt v. Dailey*, 46 Wn.2d 197, 201, 279 P.2d 1091 (1955) (emphasis added) (quoting Restatement (First) of Torts § 13, at 29 (1934)).

It is clear that all the Defendants, the Kent RFA employees and the Tri-Med employees assaulted and battered Mr. Nowell. They jumped on Mr. Nowell, they tackled him and wrestled him to the ground and then strapped him to the stretcher injuring his shoulder and his wrist in the process. See Dec. of Harold Franklin Exh. A and B, This fits the definition of assault and battery. The Defendants argue that Mr. Nowell tried to initiate physical contact with Mr. Backstein, an employee of Kent RFA but this is denied by Mr. Nowell and Mr. Sibanda. See See Dec. of Harold Franklin Exh.A and B. The Defendants also say that Mr. Nowell was restrained because he was a risk to himself and others but this is not supported by the assessment of his vital signs and their statement which said his vital signs were within the normal range. Moreover, it was not supported by Dr. Baxter's assessment at the emergency room. See See Dec. of Harold Franklin Exh C. Therefore, there is evidence to support that Mr. Nowell was assaulted and battered by the defendants and the motion for summary judgment should be denied.

F. <u>Mr. Nowell has set forth a claim for false imprisonment against Kent and Tri-Med</u>

Violation of one's right of personal liberty or restraint without legal authority are "the gist" of an action for false imprisonment. *Dang v. Ehredt*, 95 Wn.App. 670, 685, 977 P.2d 29

PLAINTIFF'S RESPONSE TO
MOTION FOR SUMMARY
JUDGMENT- 13

HAROLD H. FRANKLIN, JR. WSBA #20486
459 Seneca Avenue NW
Renton, WA 98057
(206)617-7031

(Div. 1 1999) A person is restrained or imprisoned when he or she " 'is deprived of either liberty of movement or freedom to remain in the place of his lawful choice; and such restraint or imprisonment may be accomplished by physical force alone, or by threat of force, or by conduct reasonably implying that force will be used.' " Id at 685, 686.

As set forth above, Mr. Nowell tried to leave the area and his was tackled and wrestled to the ground and then strapped to the stretcher injuring his shoulder and his wrist in the process. Mr. Nowell was deprived of liberty of movement and freedom to remain in the place of his lawful choice; and such restraint or imprisonment was accomplished by the physical force of the defendants. As set forth above, the defendants said that Mr. Nowell constituted a risk to himself and others but the Defendants would not allow Mr. Nowell to call his wife to see if she could pick him up. See See Dec. of Harold Franklin Exh. A and B. Therefore the Defendants' contention that he was a danger to himself and others is totally without merit because they would not allow him to call his wife to come and pick him up. Therefore the Defendants' motion for summary judgment should be denied.

G. <u>RCW 71.05.120 does not apply to the Kent RFA and Tri-Med in this action</u>

The Legislature clearly sets forth the intent of the Involuntary Treatment Act in RCW **71.05.010**. It states as follows:

**Legislative intent.**

> (1) The provisions of this chapter are intended by the legislature:
> (a) To protect the health and safety of persons suffering from mental disorders and substance use disorders and to protect public safety through use of the parens patriae and police powers of the state;
> (b) To prevent inappropriate, indefinite commitment of mentally disordered persons and persons with substance use disorders and to

PLAINTIFF'S RESPONSE TO
MOTION FOR SUMMARY
JUDGMENT- 14

HAROLD H. FRANKLIN, JR. WSBA #20486
459 Seneca Avenue NW
Renton, WA 98057
(206)617-7031

eliminate legal disabilities that arise from such commitment;
(c) To provide prompt evaluation and timely and appropriate treatment of persons with serious mental disorders and substance use disorders;...
(e) To provide continuity of care for persons with serious mental disorders and substance use disorders;...

RCW 71.05.010(1).

This statute does not apply to the current case. The legislative intent clearly specifies that this act was intended to protect people with mental disorders and substance abuse problems, none of which are present in Mr. Nowell in this case. Furthermore in *Poletti v. Overlake Hospital Medical Center*, 175 Wn.App. 828, 303 P.3d 1079 (Div. 1 2013), the appellate court stated that the involuntary treatment act is primarily concerned with the procedures for involuntary mental health treatment of individuals who are at risk of harming themselves or others, or who are gravely disabled and also concerned with individuals who voluntarily seek inpatient mental health treatment. *Poletti* at 832. Therefore, this statute does not apply to the present case because Mr. Nowell was not seeking mental health treatment nor was he seeking substance abuse treatment and there is no contention that his was mentally ill nor under the influence of any substance. Thus, the Involuntary Treatment Act does not relieve Kent RFA nor Tri-Med from liability in this case.

H. Mr. Nowell was not Combative toward any of the Defendants

The Kent RFA personnel are not authorized to use force against a patient unless the patient becomes combative. See Dec. of Harold Franklin Exh. E. Mr. Nowell was never combative toward any of the Defendants. Mr. Nowell cooperated with the Defendants throughout the process until they assaulted him. He was examined by the Kent RFA employees, who found that all his vital signs were in the normal range. See Dec. of Harold Franklin Exh. A. He gave them personal information about his condition and he answered all their questions. In fact, they stated that they wanted to take Mr. Nowell to hospital as a precautionary measure. See

PLAINTIFF'S RESPONSE TO
MOTION FOR SUMMARY
JUDGMENT- 15

HAROLD H. FRANKLIN, JR. WSBA #20486
459 Seneca Avenue NW
Renton, WA 98057
(206)617-7031

Dec. of Harold Franklin Exh. A. The Defendants argue that Mr. Nowell tried to initiate physical contact with Mr. Backstein an employee of Kent RFA but this is denied by Mr. Nowell and Mr. Sibanda. See Dec. of Harold Franklin Exh A and B. The Defendants also say that Mr. Nowell was restrained because he was a risk to himself and others but this is not supported by the assessment of his vital signs and their statement which said his vital signs were within the normal range. See Dec. of Harold Franklin Exh. G. Also, Mr. Nowell tried to call his wife to pick him up but the Defendants refused to let him call her before they attacked him. See Dec. of Harold Franklin Exh. A and B. When he attempted to walk away from the Defendants, that was when the Defendants used force against him he never attacked Mr. Backstein.

I. The Involuntary Commitment was "Authorized" after the Unlawful act of the Defendants

The Defendants argue that their actions to restrain Mr. Nowell were justified by the involuntary commitment issued by the Kent police department. First the Kent Police arrived after Mr. Nowell had already been restrained so he could not have justified an action after the fact. Second, the police officer states that Mr. Nowell was uncooperative and would not speak to fire personnel. See Dec. of Harold Franklin Exh. D. This of course was not true as we stated earlier in our response. Mr. Nowell cooperated and spoke to Fire and Tri-Med personnel until the time he was assaulted by them. See See Dec. of Harold Franklin Exh.A. The police officer also says that Mr. Nowell could not care for himself but this information was obviously given to the police officer before he arrived and it was not shared with the officer that Mr. Nowell called his personal physician to make an appointment and that the Fire and Tri-Med staff refused to allow him to call his wife to arrange for a ride from her to his doctor. The police officer simply provided a rubber stamp to try and justify the Kent RFA and Tri-Med's illegal actions after the fact. None of the claims made in the involuntary commitment form were supported by Dr. Baxter who stated that Mr. Nowell was capable of making decisions. See See Dec. of Harold

PLAINTIFF'S RESPONSE TO
MOTION FOR SUMMARY
JUDGMENT- 16

HAROLD H. FRANKLIN, JR. WSBA #20486
459 Seneca Avenue NW
Renton, WA 98057
(206)617-7031

Franklin Exh. C.

### J. The Kent RFA and Tri-Med were negligent in their Dealings with Mr. Nowell

To establish negligence, a plaintiff must prove four basic elements: (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause. *Degel v. Majestic Mobile Manor, Inc.,* 129 Wash.2d 43, 48,914 P.2d 728 (1996). The Defendants were negligent in their assessment, that Mr. Nowell could not care for himself when they clearly heard him on the phone trying to arrange an appointment with his doctor and he tried to call his wife but they would not allow him to do so. Furthermore, there assessment was contradicted by Dr. Baxter. See Dec. of Harold Franklin Exh. C. The Defendants owed Mr. Nowell a duty to properly assess his condition ,they breached that duty and therefore they were negligent.

## CONCLUSION

The evidence shows that Mr. Nowell was subject to excessive force causing his rights to be violated under the Fourth, Fifth and Fourteenth amendment of the U.S. constitution. He was assaulted, battered and falsely imprisoned by the Defendants and he suffered injury to his shoulder and his wrist as a result of this ordeal. Mr. Nowell was not combative at any time in his dealings with the Defendants and he was at all times through out the process capable of making decisions about his health care and was not a danger to himself or others. Therefore, there is no evidence to support the Defendants' motion for summary judgment and thus it should be denied.

Respectfully Submitted this 6th day of August, 2018.

*Harold H. Franklin, Jr.*
Harold H. Franklin, Jr.
WSBA No. 20486

PLAINTIFF'S RESPONSE TO
MOTION FOR SUMMARY
JUDGMENT- 17

HAROLD H. FRANKLIN, JR. WSBA #20486
459 Seneca Avenue NW
Renton, WA 98057
(206)617-7031

## CERTIFICATE OF SERVICE

On this 6th day of August, 2018, I electronically filed the Plaintiff's Response in Opposition to the Defendant's motion for Summary judgment using the CM/ECF System which will send such notice of filing to:

Dylan Jackson, WSBA No. 29220
J.C. Miller, Esq. WSBA No. 51932
Wilson Smith Cochran Dickerson
901 Fifth Avenue Suite 1700
Seattle, WA 98164
miller@wscd.com
Jackson@wscd.com
Attorneys for the Defendant Tri-Med

Ann E. Trivett
Megan M. Coluccio, WSBA No. 44178
Thomas P. Miller
The Christie Law Group
2100 Westlake Avenue N., Suite 206
Seattle, WA 98109
megan@christielawgroup.com
ann@christielawgroup.com
tom@christielawgroup.com
Attorneys for the Defendant Kent Regional Fire Authority

I declare under the penalty of perjury under the laws of the State of Washington that the above is true and correct.

DATED this 6th day of August, 2018 in Renton, WA.

*Harold H. Franklin, Jr.*
Harold H. Franklin, Jr.
WSBA No. 20486